UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-2744(DSD/JJK)

Tigist Tesemma and
Lawrence Smith,

       Plaintiffs,

v.                                  **ORDER**

Gwynne Evans and 1617-
Sherburne Avenue, LLC,

       Defendants.

    Colleen Walbran, Esq., Terrance Hendricks, Esq. and Southern Minnesota Regional Legal Services, 166 East 4th Street, Suite 200, St. Paul, MN 55101, counsel for plaintiffs.

    Douglas J. Mentes, Esq, 265 West 7th Street, Suite 201, St. Paul, MN 55102, counsel for defendants.

    This matter is before the court upon the motion for summary judgment by defendants Gwynne Evans and 1617-1625 Sherburne Avenue, LLC. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court denies the motion.

**BACKGROUND**

    This housing dispute arises out of the rental of residential properties in St. Paul, Minnesota by plaintiffs Tigist Tesemma and Lawrence Smith. Tesemma rented property at 1625 Sherburne Avenue from September 2006 to December 2007. Compl. ¶¶ 6-7. Smith rented

at 460 Pierce Street from mid-September 2007 to August 31, 2008. Id. ¶¶ 9-10.  Evans owns both properties.

**A.   Tesemma**

Tesemma is from Ethiopia.[1]  In August 2006, Tesemma met with Evans to discuss renting a unit.  Tesemma Aff. ¶ 5.  Tesemma paid a $100 application fee, a $525 security deposit and $525 for the first month rent.  Id. ¶ 5.  Evans offered Tesemma one unit, which was not ready for occupancy.  Id. ¶ 6.  Tesemma did not want the unit, and demanded a refund.  Id.  Evans refused, and Tesemma decided to rent the unit.  Id. ¶ 10.

Tesemma left her window open in the winter.  Id. ¶ 22.  Evans told Tesemma that she would call immigration and have Tesemma deported if Tesemma did not close the window.  Id.  Tesemma paid a fine in cash for having the window open.  Id.  The lease does not provide for any such fine.  Id.  Evans went to Tesemma's place of work to discuss Tesemma's tenancy and repeatedly threatened to have Tesemma deported.  Id. ¶ 23.  Evans also told Tesemma that she was not allowed to have visitors and that INS had keys to the building. Id. ¶¶ 22, 24.  Tesemma moved out of the unit because of Evans's conduct.  Id. ¶ 31.

---

[1] Tesemma was seeking asylum status through Immigration and Naturalization Service (INS) while she was renting from Evans. Evans knew that Tesemma was seeking asylum.  Tesemma Aff. ¶ 19. INS granted asylum to Tesemma in August 2008.  Id. Ex. 3.

**B.   Smith**

Smith is African-American and lived with his girlfriend, Ashley Preuss.  Preuss initially occupied the unit alone.  Smith Aff. ¶ 3.  On September 11, 2007, Smith applied to live in the unit with Preuss, and Evans accepted $100 to process Smith's application.  Id. ¶ 4.  A few days later Evans told Smith that he could stay in the unit but she would not add his name to the lease.  Id. ¶ 5.  Evans offered no explanation for why she would not add Smith to the lease.  Id.  Evans told Smith that he would have to pay $200 per month to stay in the unit.  The lease indicates that rent will increase by $100 per month per additional occupant.[2]  Id.  Smith paid $100 per month to occupy the unit.  Id. ¶ 7.

In October 2007, Evans began contacting Smith and Preuss on a weekly basis to complain about noise, "traffic" and illegal drug activity.  Id. ¶¶ 9-12.  Evans falsely told Smith that she was monitoring him with security cameras and threatened to bring camera footage to the police.  Id. ¶¶ 13-14, Ex. 1.  Evans told Smith that she had given keys to the apartment to the police.  Id. ¶ 15, Ex. 1.  Evans accused Smith of being a drug dealer, in the presence of Preuss, city inspectors and the building caretaker.[3]  Id. ¶ 17;

---

[2] Preuss did not receive a copy of the lease, see Preuss Aff. ¶ 4, and Evans does not have a copy of the lease, see Evans Aff. ¶ 1.  The lease is not included in the record.

[3] Smith claims that he never used or sold drugs in the apartment.  Smith Aff. ¶ 12; Preuss Aff. ¶ 11.

Preuss Aff. ¶ 10. Evans told Smith's sister that Smith was dealing drugs in the unit. Watson Aff. ¶¶ 7-10. Evans did not send Smith a lease-infraction notice or eviction papers, and police did not contact Smith. Smith Aff. ¶ 18. Smith and Preuss moved out of the unit.

On October 2, 2009, plaintiffs filed a complaint against defendants alleging housing discrimination in violation of the Fair Housing Amendments Act (FHAA), 42 U.S.C. §§ 3604(b) and 3617; 42 U.S.C. §§ 1981 and 1982; and the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70.[4] On July 6, 2010, defendants answered and filed counterclaims against plaintiffs for breach of contract and "acting in bad faith and asserting a frivolous claim." Answer ¶¶ VII-IX, ECF No. 20. On March 1, 2011, defendants moved for summary judgment.[5] The court now considers the motion.

I. **Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[4] Plaintiffs filed an amended complaint on March 2, 2010. See ECF No. 8.

[5] Defendants did not address plaintiffs's claim for violation of Minnesota Prevention of Consumer Fraud Act or defendant's own breach of contract counterclaims in the memoranda of law submitted in support of the motion for summary judgment. Therefore, the court construes the instant motion as one for partial summary judgment.

4

P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23. "There is no discrimination case exception to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." Torgerson v. City of Rochester, No. 09-1131, 2011 WL 2135636, at *8 (8th Cir. June 1, 2011) (en banc) (citation and internal quotation marks omitted).

    A.    **Disparate Treatment**

The court analyzes the FHAA, § 1981 and § 1982 claims under the same framework. See Gallagher v. Magner, 619 F.3d 823, 839

(8th Cir. 2010). The FHAA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling ... because of race, color .. or national origin." 42 U.S.C. § 3604(b). Absent direct evidence of discrimination,[6] courts apply the burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Dirden v. Dep't of Hous. & Urban Dev., 86 F.3d 112, 114 (8th Cir. 1996); United States v. Badgett, 976 F.2d 1176, 1178 (8th Cir. 1992). Pursuant to that framework, the plaintiff must first make a prima facie showing of discrimination. McDonnell Douglas, 411 U.S. at 802. Under the FHAA, this prima facie showing varies depending on the specific facts and allegations of each case. Badgett, 976 F.2d at 1178. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the defendant's conduct. McDonnell Douglas, 411 U.S. at 802. The plaintiff must then rebut the defendant's proffered reason by showing that it is pretext for unlawful discrimination. Id. at 804.

To establish a prima facie case, a plaintiff must show that she is a member of a protected class[7] and that she was "not offered the same terms, conditions or privileges of rental under

---

[6] Plaintiffs do not argue that there is direct evidence of discrimination in this case.

[7] Defendants do not dispute that plaintiffs are members of a protected class.

circumstances that give rise to a reasonable inference of unlawful discrimination." Groteboer v. Eyota Econ. Dev. Auth., 724 F. Supp. 2d 1018, 1023 (D. Minn. 2010) (citation omitted). Prohibited actions include "[l]imiting the use of privileges, services or facilities associated with a dwelling because of race, color ... or national origin of ... [a] tenant or a person associated with him or her." 24 C.F.R. § 100.65.

### 1. Tesemma

#### a. Prima Facie Burden

Tesemma argues that Evans (1) offered Tesemma only one rental unit, but offered more than one unit to non-Ethiopian tenants, see A. Preuss Aff. ¶ 3; (2) strictly enforced Tesemma's lease condition regarding overnight guests but eased this restriction for non-Ethiopian tenants, see Walbran Aff. Ex. 3, at 108; Zasowski Aff. ¶¶ 11-13; Eich Aff ¶¶ 6-9; (3) threatened to report Tesemma to INS based on her national origin but never threatened to report non-Ethiopians to authority figures, see Stace Aff. ¶ 11; and (4) told Tesemma that she could not have visitors, see Tesemma Aff. ¶ 24, but did not restrict visitors for non-Ethiopian tenants, see Stace Aff. ¶ 10. As a result, Tesemma has met her prima facie burden.[8]

---

[8] Other evidence offered by Tesemma fails to show that Tesemma was treated differently based on her protected class. See, e.g., Simmonds Aff. ¶¶ 12-13 (claiming that Evans had a general practice of trying to "increase the rent unilaterally" and "get the applicant to agree to perform caretaking duties"); see also Stace Aff. ¶ 12.

7

### b.   Legitimate, Nondiscriminatory Reason

Evans denies Tesemma's allegations, but offers no legitimate nondiscriminatory reasons for her conduct. Evans claims that Tesemma violated her lease by giving her key to guests, cooking with a propane grill with an open flame in a vacant garage at the property,[9] see Mentes Aff. Ex. 1, at ¶ 5, and leaving her window open in winter. Even accepting these allegations as true, they do not constitute legitimate, nondiscriminatory reasons for threats of deportation and telling Tesemma that she could not have visitors. As a result, Evans fails to meet her burden. A reasonable jury could credit Tesemma's accounts and discredit Evans's. Therefore summary judgment is not warranted on Tesemma's claims under the FHAA, § 1981 and § 1982.

### 2.   Smith

As an initial matter, defendants argue that Smith lacks standing because "Smith never entered into a lease with Defendant." Def.'s Reply Mem. 15. The court disagrees. Smith alleges that he asked Evans to add him to the lease and that Evans refused because of his race. Under the FHAA, it is unlawful, "[t]o *refuse* to ... rent ... a dwelling to any person because of race...." 42 U.S.C. § 3604(a) (emphasis added). The plain language of the statute

---

[9] Evans called the fire department and the incident report indicates that Tesemma was using "two deep fry cookers" in a small garage. Mentes Aff. Ex. 11, at 4. The "inspector found no propane tanks anywhere inside the unit." Id. Ex. 12.

8

indicates that it applies where, as here, an applicant alleges that the landlord refused to allow him to sign a lease because of race. Moreover, it is unlawful "[t]o discriminate against *any* person in the terms, conditions, or privileges of ... rental of a dwelling ... because of race...." Id. § 3604(b).  Under the FHAA, an aggrieved person "includes any person who ... [c]laims to have been injured by a discriminatory housing practice." 24 C.F.R. § 100.20. As a result, defendants' argument fails, and Smith has standing to raise these claims.[10]

### a. Prima Facie Burden

Smith argues that Evans did not offer the same terms, conditions or privileges of rental when Evans (1) asked Smith to pay $200 per month to live in the apartment with Preuss but asked only $100 per month from a white tenant who sought to add his white girlfriend to the lease, see Stace Aff. ¶ 9; (2) harassed him about guests and "traffic" but did not question white tenants about their guests, see id. ¶ 10; Eich Aff. ¶ 12; and (3) threatened to report him to law enforcement but did not threaten to report white tenants, see Stace Aff. ¶ 11. As a result, Smith has met his prima facie burden.

---

[10] Evans cites United States v. Koch, 352 F. Supp. 2d 970 (D. Neb. 2004) to support her argument regarding standing. This case, however, held that § 3617 "prohibit[s] unlawful discriminatory conduct after a person has taken possession of a dwelling." Id. at 979. Smith lived in the unit and therefore was in possession of the dwelling. As a result, this case is inapposite, and Evans's argument fails.

9

### b.   Legitimate, Nondiscriminatory Reason

Evans denies Smith's allegations. Evans first claims that Smith paid only $100 per month to live in the unit. This fact, however, does not explain why Evans demanded $200 from Smith and refused to add him to the lease. Evans next claims that she received complaints from other tenants about Smith regarding noise and marijuana smoke. See Evans Dep. 123. Evans offers unsigned affidavits to support these allegations.[11] Unsigned affidavits of a witness are not admissible evidence and provide no basis for summary judgment. See 3 Am. Jur. 2d Affidavits § 19; Fed. R. Civ. P. 56(c); see also Pension Ben. Guar. Corp. v. Heppenstall Co., 633 F.2d 293, 300 (3d Cir. 1980). Moreover, Evans's allegations do not justify or explain why she told Smith that the police had keys to his apartment and could enter at any time, and that he was being monitored by security cameras. As a result, Evans fails to meet her burden.

Even if Evans had offered legitimate, nondiscriminatory reasons for her conduct, summary judgment is not warranted because Smith has met his burden to raise an inference that the reasons

---

[11] Evans submitted two unsigned affidavits, one from "Katrina Bussie," and the other from "Katrina Busse." See Mentes Aff. Exs. 7-8. The "Bussie" affidavit largely contains questions and not factual assertions. See, e.g., id. Ex. 7, at ¶ 4 ("I had numerous problems with the persons residing in the apartment directly below me (beginning when? Approximately how long into your tenancy?) Did you notice when the downstairs tenants moved in? Did you recognize either the man or woman living below you?").

offered are pretext for unlawful discrimination. Smith can meet his burden by showing that Evans's explanation lacked credibility or was more likely motivated by a discriminatory reason. See Colenburg v. Starcon Int'l, Inc., 619 F.3d 986, 996 (8th Cir. 2010), abrogated by Torgerson, 2011 WL 2135636. There is no evidence that Evans reported Smith's alleged illegal activity to the police or that the police ever contacted Smith regarding drug trafficking or use in the unit. Moreover, Evans changed her explanation for her conduct, thereby undermining her credibility. Compare Walbran Aff. Ex. 6 (denying that she complained to Smith about noise) with id. Ex. 3, at 123-24 (claiming that she complained to Smith about noise). A reasonable jury could credit Smith's accounts over Evans's version of the facts. Therefore, summary judgment is not warranted on Smith's claims under the FHAA, § 1981 and § 1982.

**B.   Hostile Environment**

Plaintiffs next allege that defendants created a hostile environment in violation of the FHAA. It is unlawful to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of" her right to fair housing. 42 U.S.C. § 3617. To establish a hostile-environment claim, plaintiffs must show severe and pervasive harassment. See Neudecker v. Boisclair Corp., 351 F.3d 361, 364-65 (8th Cir. 2003). Tesemma alleges that Evans repeatedly threatened her with deportation, both in her residence

11

and at work, and told her that INS had keys to her unit. Evans knew that Tesemma was seeking asylum during this time. Tesemma further alleges that this conduct caused her extreme stress and anxiety, and ultimately forced her to move. Smith alleges that Evans repeatedly threatened to call the police, accused him of dealing drugs, told his family members and others that he was a drug dealer, told him that the police had keys to his unit and said that he was being monitored by cameras. Smith further alleges that this conduct caused him extreme stress and anxiety. This alleged harassment is sufficiently severe to deprive plaintiffs of their right to enjoy their homes. See id. at 365. A reasonable jury could credit Tesemma and Smith and discredit Evans.

Evans argues that plaintiffs failed to substantiate their claims with probative, admissible evidence. To survive summary judgment, the nonmoving party must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Here, plaintiffs submitted their own affidavits, affidavits of white tenants, affidavits of witnesses to the alleged harassment and supporting exhibits including an audio recording substantiating Smith's allegations. Where, as here, the evidence turns on the credibility that the trier-of-fact attributes to the testimony of the witnesses, summary judgment is not warranted. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions,

12

not those of a judge." <u>Torgerson</u>, 2011 WL 2135636, at *7 (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)). As a result, summary judgment on the hostile environment claim is not warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [ECF No. 36] is denied.

Dated: August 4, 2011

<u>s/David S. Doty</u>
David S. Doty, Judge
United States District Court
